**WOLF, SAYER & HELLER v. PATENT CASING CO. et al.**

(Circuit Court of Appeals, Seventh Circuit. October 18, 1924. Rehearing Denied January 14, 1925.)

No. 3385.

1. Patents ⬤═══328—May, 1,036,290, for sausage casing, held not infringed.

The May patent No. 1,036,290, for sausage casing, is invalid, as not covering the real invention intended by the patentee; also *held* not infringed.

2. Patents ⬤═══328—May, 1,063,713 and 1,063,714, for sausage casing and method of making same, held invalid for lack of invention.

The May patents, No. 1,063,713, for sausage casing, and No. 1,063,714, for method of making sausage casing, *held* invalid for lack of invention, in view of the prior art.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Suit in equity by the Patent Casing Company and Solomon May against Wolf, Sayer and Heller. Decree for complainants, and defendant appeals. Reversed, with directions to dismiss.

Charles F. Murray and S. W. David, both of Chicago, Ill., for appellant.

Geo. L. Wilkinson, of Chicago, Ill., for appellees.

Before EVANS and PAGE, Circuit Judges, and LUSE, District Judge.

PAGE, Circuit Judge. This is an appeal by defendant appellant, here called defendant, to reverse a decree in favor of plaintiffs appellees, here called plaintiffs, finding letters patent No. 1,036,290, granted August 20, 1912, No. 1,063,713, granted June 3, 1913, and No. 1,063,714, granted June 3, 1913, valid, and all claims of the first and second patents and claims 4 and 5 of the third patent infringed. Patent No. 1,036,291, granted August 20, 1912, was also in suit, but was dismissed out of the case by plaintiffs.

The plaintiff Patent Casing Company is licensee of May, the patentee. May, who was engaged in selling sausage casings made of hog intestines, found that the demand for large-sized casings exceeded the normal supply, and commenced experiments by slitting longitudinally two small intestines and attempting to sew the edges together to make a larger casing. His early attempts were to sew undried intestines, but because of their slippery condition he found it impossible either to keep the edges together or practicable to sew through the material in that condition. It was desirable, and the government regulations required, that, when filled, the casing should be turned outside in. Ultimately May turned one small intestine inside out and slipped it into another casing, not turned, thereby bringing the slimy outsides of the two in contact. He closed one end, blew them up, and closed the other end. When they were dried, he slit them longitudinally along one side, and it was found that the contacting faces adhered, so that they could be readily sewed along their edges without slipping. Then the adhering faces were separated, so that they made a casing substantially double the normal size of the single intestine. The demand was for, and May's purpose was to make, a larger casing to meet the demand.

[1] March 7, 1912, he applied for patent No. 1,036,290, for sausage casing, and patent No. 1,036,291, method of making sausage casing. The latter is the patent that was dismissed out of the case. Of these two patents, May testified: "These two patents are the consequence of an error made by my patent attorneys at the time, a misunderstanding of the instruction that I had given to the patent attorney, and which was recognized right shortly afterwards and corrected."

To make the correction, May, on September 3, 1912, applied for patent No. 1,063,713, on "method of making sausage casings." On September 21, 1912, May applied for letters patent in suit No. 1,063,714, on "sausage casing and method of making the same."

A most casual reading of the specifications in No. 1,036,290, confirms the statement made by McNeill, on behalf of May, in his letter to May's Washington attorneys on August 26, 1912, that "no hint is given in this specification as to the meat of the invention." The specifications of No. 1,036,290 say: "Figure 1 is a perspective view of a sausage casing constructed in accordance with my invention."

Figure 1 shows all of the edges of the two intestines joined in one seam. After describing the method of distending the intestines by blowing them up with air, the specifications say that another method may be used; that is, after cutting them open they may be stretched, the two thickness with the slimy edges in contact, over a board or frame, as shown in Figure 5. The only thing said about sewing is: "When sufficiently stretched and dried, the ends may be trimmed off and the tube then severed lengthwise, the edges overlapped or turned in and stitched, as at 6, on a machine."

*6* indicates the single seam in Figure 1, above referred to. There is not here any hint or suggestion of any purpose to make a larger casing. In his testimony, May said that the casings made according to those patents were not of larger size, meaning Nos. 1,036,290 and 1,036,291. Neither do we find reflected in the language of the claims any suggestion of an enlarged· casing. Claim 1 is:

"The herein described sausage casing, composed of two layers of intestine material, with their slimy surfaces in contact and dried, and with their edges stitched longitudinally."

The "herein described sausage casing" must refer to Figure 1 and the language of the specifications relating thereto. The words "composed of two layers of intestinal material" must mean a double-walled casing. The casing for which plaintiffs are contending, when it becomes a casing, is not composed of two layers, except under No. 1,063,714. The ordinary meaning of "layer" is that it is one of two or more, one spread upon the other. Figure 1 has layers, but what the inventor intended has none. The words "with their slimy surfaces in contact and dried, and with their ·edges stitched longitudinally," must mean that which is shown in Figure 1, where the dried surfaces remain in contact and the edges are stitched longitudinally. In the sausage casing as intended by May, the slimy surfaces were not to remain in contact. They did so remain under No. 1,036,290, as is a little better illustrated by the language of claim 2, viz.:

"The herein · described sausage casing, composed of intestines, with their inner walls in contact and adhering and with their longitudinal edges stitched .together."

In the process patent, No. 1,036,291, dismissed out of the case, the specifications and figures likewise give no hint of what the inventor says his real intention and purpose was. Figure 3 is a cross-section, showing several layers and but one seam. Figure 4 shows the casing after the stitching, the seam on one edge only, and the language of the specification with reference to the operations after the intestines are dried·is identical with the language in No. 1,036,290, clearly showing double walls, with all thicknesses involved in one seam, and no enlargement. Clearly defendant did not infringe No. 1,036,290. That patent and No. 1,036,291 are unimportant here, except in so far as they may affect plaintiffs' rights under the last two patents.

[2]. *Patent No. 1,063,714.*—In this patent, the objects stated are: (1) A method of utilizing the poorer quality of intestines, heretofore discarded; (2) method wherein the resulting casing is of a greater sectional capacity than intestines from which the same are made; (3) to provide a casing wherein the walls of the casing are strengthened by the use of a plurality of layers or sections of intestines. In each of the six figures of the drawing, excepting Figure 6, is shown a plurality of outer walls. Figure 6 shows a plurality of layers in its lower half only. It is then stated:

"The primary object of the present invention is to provide a method whereby the intestines which are small and of poor quality may be utilized for forming sausage casings. This is accomplished by utilizing two or more layers of such intestines for building up the wall of the casing. In carrying out the invention, I take four sections of intestines, *1, 2, 3,* and *4,* as illustrated in Figure 1. * * * After these sections have been inserted one within the other, the ends are preferably tied, and the same distended by the use of air or the like, so that the adjacent surfaces of the intestines are forced into contact with one another. * * * In Figure 6 I have shown' a slightly modified form of my invention, wherein only one section of the wall of the casing is reinforced or made of two layers of material. By my improved method I may use the intestines which are poor in quality with the intestines which are of better quality."

Claims 4 and 5 are here involved:

"4. A sausage casing comprising a plurality of sections of intestines stitched together at each longitudinal edge, certain ·of said sections being formed· by two or more layers of the intestines."

That claim was evidently drawn to cover Figure 6. There is no evidence. of its infringement.

"5. A sausage casing comprising a plurality of complete sections of intestines split longitudinally and stitched together along each longitudinal edge, the natural inner faces of said intestines forming the outer face of said casing."

While one of the stated objects, "method wherein the resulting casing is of greater sectional capacity than intestines from which the same are made," might admit of a single layer in the walls, yet no·such method is set out. The primary purpose of the patent is to give additional strength to casings wherein the poorer quality of intestines are used, by doubling or tripling the walls. The only departure therefrom is in Figure 6, where a single layer is shown on one side. However,

the purpose of Figure 6 is, not to illustrate a casing with a single wall, but to show that the double layers of poor intestines may make one side of a casing, and that the other side may be of a single layer made of a better intestine.

We are of opinion that claim 5 is not limited to a casing made with two or more layers in the walls, nor to a casing that may be made under Figure 6, but that a casing, having single layer walls throughout, may be made under that claim. It is therefore broader than the disclosures of the specification and is invalid.

Although May testified that No. 1,036,290 was all a mistake, and did not disclose his intention, yet plaintiffs are here claiming it as May's invention. Clearly each of these patents shows a casing with a plurality of layers in the walls, and, while the specifications do not state the purpose of the double wall, yet it necessarily follows that the main, if not the sole, purpose of a plurality of layers in the walls would be to give strength over that afforded by the use of the single layer.

There are other matters in the record affecting the validity of No. 1,063,714 that will be apparent in a discussion of No. 1,063,713. Stating the objects in this latter patent, in the specifications it is said:

(1) "An object of the invention is to make a sausage casing from an animal intestine which shall be of larger capacity in cross-sectional area than the intestine from which the casing is made.

(2) "A further object of the invention is to form and shape regular sized casings from intestines which vary in size.

(3) "These and other objects will in part be obvious, and will in part be hereinafter more fully described.

In September, 1912, when Nos. 1,063,713 and 1,063,714 were applied for, it was common to use beef wizens (or weasands) for sausage casings, and they were turned inside out, tied, blown up, and dried. That had been a practice for many years. It is also stipulated by plaintiffs that certain witnesses, who were not called, would testify that they had sewed sections of intestines to make casings. In Paris, in 1894, intestines were sewed together along their longitudinal edges, the same as those shown in the evidence in this case. Sausage casings were made more than 25 years ago in Germany. Defendant bought in Germany and brought to this country a sewing machine for use in sewing intestines before application was made for either of the May patents.

In the English Official Journal of Patents of August, 1890, appears an advertisement relating to the preserving and packing of cooked meats. It is there said: "The substances * * * are covered with bullock's wizens, two or more of which may be stitched together."

The specifications of the English Waide patent, filed March 19, 1889, in the record, say: "I construct the coverings from the ordinary blown up and dried bullocks wizens of commerce, but, as these are usually about 24 inches long by 1¾ inches diameter, I enlarge their diameter and length by cutting them open longitudinally and joining them together with an ordinary lock-stitch sewing machine to any required size or shape. * * * I so arrange them that the edges or margins beyond the line of stitches which are damped and turned inside, and the smoothest and most glossy surfaces are outside. I also make these coverings partly of single and partly of double material."

The German patent to Schwarz, issued in January, 1911, says: "The object of the invention is a method of producing artificial sausage casings of any desired diameter and any desired size from animal intestines, and by which method a complete substitute for the middle intestine is provided. * * * The method, according to the present invention, consists in this: That cheap classes of intestines, as, for instance, the so-called 'ring intestines,' or other intestines which have a spiral shape, or even straight intestines, are slit longitudinally while in fresh condition, or after having been salted, and are then spread out and dried while in this condition. * * * For the formation of casings these intestines are then cut, and are united at their edges in accordance with the diameter to be produced, and in accordance with the length desired; this union being most simply effected by sewing on the sewing machine."

The German patent to Deutsch was issued on July 11, 1912, after the date of the applications, but before the issuance to May of Nos. 1,036,290 and 1,036,291. There it is stated: "A process is already known for making sausage casings of desired size and desired diameter from animal intestines, in which fresh or salted intestines are slitted and dried, whereby the membranes thus obtained are joined at the edges to form a casing, for example by sewing."

Then follows the description of Deutsch's method, as shown in the claim: "Process for making wide intestine bags from animal membranes for receiving meat and sausage goods as well as other foodstuffs, characterized in that the membranes, purified, cleaned, and prepared in known manner, are stretch-

ed on a mandrel in wet condition and are gummed together at the seam, in order to be released in the dry condition and withdrawn from the mandrel."

It thus appears that, long prior to May's first application, it had been a common practice in this country and Europe to blow up and dry beef wizens (or weasands), and as shown in the Waide advertisement, the cutting up of wizens (or weasands) and the stitching of the pieces together to make larger packages was known as early as 1889. The method of building up a larger casing from small intestines, by matching them together and sewing or otherwise joining them along their longitudinal edges, after drying them, was set forth in the Schwarz and the Deutsch patents.

From these many sources it appears that the stated objects in No. 1,036,713 have long been accomplished in different ways. The only problem that ever confronted May was how to overcome the difficulty stated in his own language as follows: "I realized that a way had to be found to prepare this material so that when you get it to the sewing machine it can-be done quick, easy, can be done by anybody; while the other way, as long as they were not properly matched, which they are by splitting these together, it would take some dexterity for the operator to hold them so that they would not slip or slip away from the other, and you would sew only one, or the machine would probably run in while they were trying to hold them together, the machine would run in and sew in a wide margin at one place and no margin at another place. I kept at this thing until I finally conceived this idea of putting two inside of each other and blowing them up; letting them dry, and then splitting them up, and then I had a more easy matter than taking two pieces of goods and then sewing them here, because they were already matched, a keen edge there; they could not get away from me."

That is precisely the thing disclosed in the specifications in Nos. 1,036,290 and 1,036,-291: "In carrying out my method, I first take the intestines *1, 2,* after they have been cured in salt, and soak them in water, rendering them soft and pliable. The fat is then removed by scraping, but on the interior surface there is still left a layer of slimy material *3.* I then turn one intestine inside out, as shown on the left hand of Figure 1, and slip it inside the other. I then tie one end of the double casing as at *4,* and distend the same by blowing up from the other end, and tie that end, leaving them in this condition (see Figure 2) until dry. During this

drying operation, the slimy surfaces in contact set, and, when dry, hold the material in stretched condition."

In No. 1,063,713, the specification is: "In carrying out the invention I take two sections of an intestine, *1* and *2,* or two separate intestines. It will be understood that these intestines may be first cured in salt and soaked in water to render them soft and pliable. The fat may be then removed by scraping or otherwise from the outer surface, but on the inner surface there is left a layer of fat or slimy material, indicated at *3* in the drawings. Section *2,* as shown in Figure 1, is turned inside out, so as to bring the slimy surface to the outer face of the section. This section *2* is then inserted in the section *1* of the intestine. The built-up tubular casing is then distended and dried, so that the slimy surfaces will temporarily adhere to each other. This may be brought about by tying the ends *4* and *5* (see Figure 2) and inflating the casing with air or the like."

Figures 1, 2, and 3, and the language describing them, are substantially identical in No. 1,036,291 and No. 1,063,713. The sole difference of substance between the two patents is in the following:

| No. 1,036,291: | No. 1,063,713: |
|---|---|
| "When sufficiently stretched and dried, the ends may be trimmed off and the tube then severed lengthwise, the edges overlapped or turned in, and stitched." | "After the tubular casing referred to is thoroughly dried, it may be cut longitudinally. * * * The ends of the casing may be also cut * * * if desired. * * * The material can be spread out flat, * * * then stitched along each longitudinal edge; * * * the two sections of material, which are adhering together, may be separated from each other, so as to form a circular space." |

All that was done, or that can be done, under the disclosures in No. 1,063,713, that was not disclosed in No. 1,036,291, is the stitching along both edges and separating the faces, so as to make a casing of larger diameter. That was as old in the art as the Waide patent, and, besides, it did not constitute invention to stitch along two edges, instead of one, and separate the two adhering surfaces. The disclosure in No. 1,063,-713 is limited to a section that is turned inside out and inserted in a similar section that is not turned. This is an important step in the making of sausage casings, where they

are to be built up from two or more small casings, because government inspection regulations require that the inside of the intestine shall be the outside of the casing. While claims 2 and 3 provide for the placing of one section within another, neither provides for the turning of either section; but, if claims 2 and 3 are valid, then one who constructs a casing which would read upon the claims would be an infringer, without the elements being within the disclosures of the patent. The word "distended," as used in each of the patents, was evidently used as meaning the inflation with air after tying up one end and then continuing the inflation by tying up the other end. Synonyms for "distend" are "dilate; swell; bloat; fill; inflate." Allen's Synonyms.

While each of the claims begins with the words, "the herein described method of making sausage casings," it is evident that what is meant thereby is defined by what follows; that is, in claim 1, the words are, "consisting in placing the distended surfaces of two intestines in contact." Seemingly the only possible construction of that language is that having two sections of intestines that are distended, their outer surfaces are in some way brought in contact. The disclosure of the patent is that one turned section shall be placed within another section not turned, and thereafter the inner surface of the one and the outer surface of the other section are brought and kept in contact by distension.

We are of opinion that the claims of the patent are invalid.

The decree is reversed, with directions to dismiss the bill.